JERSEY SHORE SAVINGS AND LOAN ASSOCIATION, A NEW
JERSEY CORPORATION, PLAINTIFF, v. JACOB EDELSTEIN
AND IDELLE EDELSTEIN, HIS WIFE, DEFENDANTS.

Superior Court of New Jersey
Chancery Division
Monmouth County

June 12, 1987.

*Benjamin Edelstein* for defendants (*Edelstein & Edelstein*,
attorneys).

*Douglas J. Hull* for plaintiff (*Summerill & Hull*, attorneys).

McGANN, JR., J.S.C.

Plaintiff, Jersey Shore Savings and Loan Association, held a second mortgage on residential property in Neptune Township owned by Claude Collins and Barbara Collins, his wife. Jacob and Idelle Edelstein held the first mortgage. Both mortgages being in default the Edelsteins filed an action to foreclose the first mortgage. Their complaint joined Jersey Shore as a junior lienor. Jersey Shore filed its answer not contesting the Edelstein action but rather joining in the demand for foreclosure and seeking to have its mortgage loan balance reported on in the final judgment. After entry of default as to all other defendants, plaintiffs served a notice of application for final judgment on counsel for Jersey Shore. The notice, mailed December 22, 1983 made the motion returnable on January 13, 1984 before the Clerk of the Superior Court, State House Annex, Trenton. It sought a judgment "for the relief demanded in the ... Complaint." The notice and supporting papers are stamped "received" by the foreclosure unit as of December 28, 1983. The supporting papers consist of a certification of the amount due ($10,564.05 as of April 1, 1983 together with interest due thereafter at 9½% per annum) signed by plaintiffs; a certification of costs and fees ($239.16) signed by their attorney.

Counsel for Jersey Shore received the notice of motion and prepared an affidavit of amount due on behalf of Jersey Shore. That affidavit together with the original note and mortgage was mailed to the foreclosure unit on January 10, 1984. The affidavit (setting forth the amount due to be $11,255.43) is stamped "Received" by the foreclosure unit on January 19.

Also, on January 10, 1984 counsel for Jersey Shore mailed to the Edelsteins' attorney a letter advising that Jersey Shore intended to bid at the sheriff's sale in order to protect its interest. It is also unquestioned that prior to that date there

had been telephone discussions between those same attorneys concerning the possibility of Jersey Shore paying off the Edelsteins and taking an assignment of their first mortgage. Those discussions foundered on the amount to be paid for such assignment.

It is apparent that after the return date of the motion for entry of final judgment (January 13, 1984)—and having received no papers from Jersey Shore (they arrived on January 19) the foreclosure unit in the usual course forwarded the Edelstein proofs and final judgment prepared by their attorney to the general equity judge in Mercer County for signature. The judgment was signed on January 20, 1984. Although in its preamble it did recite, among other matters:

And it further appearing that defendant, Keystone Savings and Loan Association (Jersey Shore Savings and Loan Association) has filed herein an answer wherein said defendant avers that it is the holder of a mortgage made by the defendants, Claude Collins and Barbara A. Collins, his wife, and admits that the lien of plaintiffs' mortgage is prior to the lien of its mortgage;

the judgment did not determine the amount due on the Jersey Shore mortgage nor did it direct that the property be sold in order to pay off that debt as well. It provides, rather, as follows:

It is, on this 20th day of January, 1984, ORDERED and ADJUDGED that the plaintiffs are entitled to have the sum of $10,564.05, together with lawful interest from December 10, 1983 and costs of suit to be taxed according to law, including therein a counsel fee in the sum of $255.64, computed pursuant to R.4:42–9(a)(4), raised and paid out of the mortgaged premises;

And it is further ORDERED and ADJUDGED, that plaintiffs are entitled to have their mortgage, together with interest and costs, as aforesaid, raised and paid out of the mortgaged premises described in the Amended Complaint;

And it is further ORDERED and ADJUDGED, that so much of said mortgaged premises as will be sufficient to satisfy said mortgage debt, interest and costs, be sold, and that an execution for that purpose duly issue out of this Court, directed to the Sheriff of the County of Monmouth, commanding him to make sale, according to law, of so much of said mortgaged premises as will be sufficient to satisfy said mortgage debt, interest and costs, and to pay from the proceeds of said sale to plaintiffs or their attorney the amount of plaintiffs' mortgage debt, interest and costs, as aforesaid, and that in the event there is a surplus remaining after said sale and said application of the proceeds thereof, the same shall be brought into this Court and deposited with the Clerk of the Court, to be there held subject to the further order of this Court, and that said

Sheriff shall make his report of said sale to this Court, as required by the Rules of this Court;

And it is further ORDERED and ADJUDGED, that the defendants and each of them, stand absolutely debarred and foreclosed of and from any and all equity of redemption of, in, and to so much of said mortgaged premises as shall be sold, as aforesaid, under this judgment.

Plaintiffs caused a writ of execution, consonant with the terms of the judgment to be issued by the clerk on February 29, 1984. That, too, was prepared by plaintiffs counsel. Significantly, as prepared, it read as follows:

Together, with all and singular the rights, liberties, privileges hereditaments, and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and remainders, rents, issues and profits thereof, and also all the estate, right, title, interest, use, property, claim and demand of the said defendants, of, in, to, and out of the same, be sold, to pay and satisfy first unto the plaintiffs the sum of $10,564.05, being the principal and interest secured by a certain mortgage given by Claude Collins and Barbara A. Collins, his wife, bearing date the 3rd day of December, 1978, together with lawful interest thereon from the 10th day of December, 1983, until the same be paid and satisfied and also the costs of the plaintiffs, ~~and in the second place to the defendant, Jersey Shore Savings and Loan Association, successor by acquisition to Keystone Savings and Loan Association, the sum of $11,255.43, being the principal and interest secured by a certain mortgage given by Claude Collins and Barbara Collins, his wife, bearing date the 2nd day of January, 1979, together with lawful interest from the 1st day of January, 1984, until the same be paid and satisfied, and also the costs of the said defendant~~; and that for that purpose a writ of execution should issue, directed to the Sheriff of the County of Monmouth, commanding him to make sale as aforesaid; and that the surplus money arising from such sale, if any there be, should be brought into said court, subject to the further order of said court, as by the said judgment remaining as of record in our Superior Court of New Jersey at Trenton, doth and may more fully appear; and

WHEREAS, the costs of the plaintiffs have been duly taxed at the sum of $544.80 ~~and the costs of the defendant, have been duly taxed at the sum of $~~ THEREFORE, you are hereby commanded that you cause to be made of the premises aforesaid, by selling so much of the same as maybe needful and necessary for the purpose, first the said sum of $10,564.05, and the same you do pay to the plaintiffs or their attorneys, together with the lawful interest thereon as aforesaid, and the sum aforesaid of costs; ~~and in the second place you do pay to the said defendant, Jersey Shore Savings and Loan Association, successor by acquisition to Keystone Savings and Loan Association, or its attorneys, the sum of $11,255.43, together with lawful interest thereon as aforesaid, and the sum aforesaid of costs~~ and that you have the surplus money, if any there be, before the Superior Court of New Jersey aforesaid, at Trenton, New Jersey ...

The language interlineations were made by the clerk before signing the writ and after comparing it with the judgment that had previously been entered.  In that form it was signed by the clerk and presented to the sheriff along with the statement of taxed costs.  A copy of neither the judgment nor the writ was sent to counsel for Jersey Shore.

The property was advertised for sale under the writ by the sheriff.  Plaintiffs in the foreclosure action (the Edelsteins) failed to mail notice of the sale to Jersey Shore as required by *R.* 4:65–2.

Sale was held on May 31, 1984.  The Edelsteins bid in the property for a nominal $100.  (The amount due then at sale on the underlying indebtedness, together with all fees, was $12,-096.63).  Having received no notice, Jersey Shore did not have a representative at the sale.  Had it received notice there is no doubt that it would have had a representative present and able to bid to protect its second mortgage.

The premises purchased were in need of substantial repairs in order to become habitable and marketable.  The Edelsteins undertook those repairs at a cost of some $13,500.  In September 1984 they contracted to sell the property to a third party for a sum representing a substantial profit over the total invested by way of the amount due on the first mortgage plus the cost of repairs.

Jersey Shore first learned of the sale on December 31, 1984 in a routine call from its counsel to the Edelsteins' attorney inquiring as to the status of the matter.  He was told of the fact of the sheriff's sale but not of the fact of the existing contract with the third party.

Title with the third party closed on January 10, 1985.  On January 31, 1985 Jersey Shore filed a motion in the foreclosure case to vacate the sheriff's sale, invalidate the deed given by the sheriff and to order a resale of the premises.  That motion was denied because of the intervening right of the innocent third-party purchaser for value.  *R.* 4:65–2.  *Assoulin v. Sug-*

*arman,* 159 *N.J.Super.* 393, 398 (App.Div.1978); *In re Eagleson Estate,* 172 *N.J.Super.* 98, 104 (App.Div.1980).

Jersey Shore then began this action on September 3, 1986. The relief it seeks is the entry of a money judgment against the Edelsteins in the amount of the principal due on its mortgage loan together with interest to date. Not articulated but clearly the basis for the relief sought is that such a money judgment is necessary to prevent the Edelsteins from being unjustly enriched at the expense of Jersey Shore. The alleged enrichment consists of the inability of Jersey Shore to bid at the sheriff's sale to protect its second mortgage as a direct result of Edelsteins' failure to give the notice required by *R.* 4:65–2. Jersey Shore urges that the ultimate profit made was at the expense of Jersey Shore's loss.[1]

Defendants move for summary judgment dismissing the complaint on the ground that plaintiff is not entitled to the relief sought. Plaintiff responds with a predictable cross-motion. The facts are not in dispute. They are those set forth above. Summary judgment is appropriate.

The doctrine of unjust enrichment is equitable in nature. It is applied where the facts show that one party has received a benefit at the expense of another, which it is simply unjust to permit him to retain. The remedy for unjust enrichment is an order of restitution. *Flemming v. Ronson Corp.,* 107 *N.J.Super.* 311, 316 (Law Div.1969), aff'd 114 *N.J.Super.* 221 (App. Div.1971); *Hirsch v. Travelers Insurance Company,* 134 *N.J. Super.* 466, 470 (App.Div.1975). Restatement, *Restitution,* § 1.

Here it is patent that Jersey Shore was unable to protect its second mortgage because the Edelsteins failed to comply with the requirement of *R.* 4:65–2. They knew, from its answer, that Jersey Shore wanted its mortgage reported on in the final

---

[1] It is conceded 1) that the original debtors are judgment-proof and 2) that the profit made exceeds the amount due to Jersey Shore.

judgment. It did respond to their motion for judgment by submitting its proof of amount due to the clerk in a timely fashion, yet the form of final judgment submitted by the Edelsteins made no provision for Jersey Shore. Had it done so the general equity judge would have checked again with the foreclosure unit before striking out a reference to the second mortgage. Instead, the form of the judgment, omitting as it did any reference to a second mortgage, lulled the general equity judge into a routine signature on routine papers presented in a routine fashion. The form of the writ of execution presented to the clerk by the Edelsteins is clear proof of their knowledge of a continuing obligation to protect the answering second mortgagee. The alert clerk struck out the references to the second mortgagee based on his review of the final judgment, but when the writ was received back in that altered fashion, counsel for plaintiffs in the foreclosure action must have realized something was amiss. Under those circumstances the failure to send out the *R.* 4:65–2 notice seems calculated rather than a simple oversight. That sense is reinforced by the Edelsteins' response when Jersey Shore made inquiry at the end of December 1984. Their attorney simply stated that the Edelsteins had purchased the property at the sheriff's sale on May 31, 1984. But the critical information that the property was under contract to be sold was not proffered. Had counsel for Jersey Shore been given that information, this separate action would not have been necessary. On motion in the foreclosure action the court could have permitted the title to close with the third party and directed that sufficient of the sale proceeds be held in an interest-bearing account by the Edelsteins' attorney pending resolution of entitlement to the same.

That information not having been furnished, title did close on January 10, 1985; the sale proceeds were turned over to the Edelsteins and Jersey Shore's motion filed January 31, 1985 was rendered moot.

The Edelsteins were never entitled to make a windfall profit. The purpose of foreclosure of the equity of redemption is, at its root, to make a lender whole with regard to the original indebtedness. Its primary purpose is not that the mortgagee get something for nothing. *Carteret Savings and Loan Ass'n. F.A. v. Davis*, 105 *N.J.* 344, 347 (1987).

The Edelsteins have been unjustly enriched to the extent of the amount of principal and interest due on the second mortgage as of the date of sale—May 31, 1984. In addition, Jersey Shore has been deprived of the use of its money since that date while the Edelsteins have had the benefit of the same. Accordingly, judgment is entered in favor of Jersey Shore and against the Edelsteins in the amount of $11,255.43 together with interest thereon at 12% per annum from January 1, 1984 through May 31, 1984. Interest on that judgment will then run at the rate set forth in *R.* 4:42–11 from June 1, 1984 until the date of payment of the judgment. Mr. Hull will submit the judgment.